LOUIS B. TIM, PROSECUTOR, v. CITY OF LONG BRANCH ET AL., DEFENDANTS.

Argued May 9, 1945—Decided May 13, 1946.

Before Justices DONGES, HEHER and COLIE.

For the prosecutor, *Parsons, Labrecque & Borden.*

For the defendants, *Quinn & Doremus* and *DeVoe Tomlinson.*

For the United States of America, *B. Thorn Lord* and *Marvin C. Taylor* (of the Massachusetts bar).

The opinion of the court was delivered by

DONGES, J. This writ of *certiorari* brings up for review "a certain building permit No. 9587, dated July 30th, 1943, issued by George Northam, building inspector, for the construction of fourteen (14) one-family apartments upon the premises owned by Adele Trounstine, and located at the corner of Westwood and Bath Avenues in the City of Long Branch, and of a certain resolution, determination and order of the Board of Adjustment of the City of Long Branch, adopted on the 16th day of September, 1943, which modified said building permit so as to authorize and permit the construction of nine (9) apartments or family units in said dwelling house." The defendants named in the writ are the City of Long Branch, the building inspector of that city, the members of the Board of Adjustment of that city, the owner of the property, Adele Trounstine, the corporate contractor, and the National Housing Agency. The latter did not participate in the case.

The writ was allowed in October, 1943, and was listed and argued at the May term, 1945, at which time application was made to appear and argue the matter on behalf of the United States. Leave was given and oral argument was heard. Thereafter briefs were submitted by the United States and the prosecutor. The United States did not seek to be made a party, but merely to be heard.

There is no dispute concerning the essential facts. The defendant, Adele Trounstine, owned the property in question. The prosecutor owns the property across the street. On or about May 1st, 1943, the Trounstines moved out of the property. In February, 1943, Mr. Trounstine submitted a sketch of proposed changes of the building into an apartment house to the Board of Commissioners of Long Branch and received

their oral approval and the approval of the building inspector. The sketch contemplated nine apartments. The mayor of Long Branch testified before the Board of Adjustment that the ordinance in February, 1943, provided for buildings of five or more apartments in the zone in which the Trounstine property was located; that the Commissioners contemplated a change in the ordinance to limit the number to not less than three nor more than six. In March, 1943, the ordinance was changed to so provide and the property put in the zone so limited. The building inspector marked the sketch as approved, over his signature, and the mayor and inspector testified that they considered that a permit under the Zoning Act in effect on February 3d had been given to construct nine apartments as requested. There was no limit as to the number of apartments permitted in that zone in February. The only limitation was "not less than five." Subsequently, on June 26th, 1943, the premises were leased to the United States of America, acting by the National Housing Agency, and new sketches and plans were prepared. The final plans approved by the Tenement House Commission, and involving expenditures by the federal government in the sum of over $25,000, were required to be sent to Washington for approval. This involved considerable delay and on July 30th, 1943, a permit was issued to the contractor, War Housing and the owner for construction of changes in the building to "14 family units." Under the terms of the lease and the contract for alterations, the federal government was to pay all costs therefor, the owner to secure the benefit thereof upon return of the property to her. The work was started on July 19th, 1943. On August 18th prosecutor filed a petition with the Board of Adjustment praying that the "action of the Inspector of Buildings be reversed or modified as the facts may be determined." Hearing was held by the Board on September 9th, 1943. It was there testified that on August 25th the work was 65% completed, and on September 9th, the date of the hearing, was 87% completed, and would be finished in ten days thereafter.

Prosecutor challenges the power and authority of the building inspector to grant the permit upon the ground that it

was in violation of the existing ordinance at the time of its issuance, and that the Board of Adjustment was without power and authority to modify the number of apartments from fourteen to nine.

We do not deem it necessary to determine these questions. Nor do we think it necessary to consider the questions raised in the argument and brief on behalf of the United States. The only questions before us are those brought up by the writ of *certiorari*, namely, the validity of the action of the building inspector and of the Board of Adjustment.

As stated above, to the knowledge of prosecutor the property was vacated by the owner in May. After formal application permission to alter was given on July 19th, by the building inspector, and the work was commenced immediately. The first step taken by prosecutor was on August 18th, when his counsel sent a letter to the contractor, advising that a petition of appeal had been filed with the Board of Adjustment. The uncontradicted testimony is that, about that time, the work was 65% completed, and on the date of the hearing by the Board of Adjustment the work was 87% completed.

There is no question of the authority of the Building Inspector to issue a permit for the alteration of the building. The question is as to the effect of the issuance of a permit not within the limitation of the zoning ordinance. Nor is there any allegation of fraud or deceit in the procurement of the permit.

It appears, therefore, that, under the undisputed testimony, the case comes within the holding of the Court of Errors and Appeals in *Freeman* v. *Hague,* 106 *N. J. L.* 137, in which it was said, "But even if it be assumed that the board of commissioners had improperly or erroneously recommended the granting of the permit, nevertheless, we are clearly of the view that the board was without lawful power to revoke such permit, after the prosecutrix had acted upon the faith of it, by the expenditure of moneys in the prosecution of the work, and had entered into contractual relations with builders for the erection of the garage, unless it appeared that such permit was obtained by fraud or deceit."

This holding was followed in *Kornylak* v. *Hague,* 8 *N. J.*

*Mis. R.* 481; 150 *Atl. Rep.* 669; *Pabst* v. *Ferner*, 8 *N. J. Mis. R.* 621; 151 *Atl. Rep.* 368; *Dickinson* v. *Busch*, 122 *N. J. L.* 71.

We conclude that, in the instant case, the owner, lessee and contractor acted in good faith upon the belief that the permit was valid and effective, and that prosecutor delayed action too long to be awarded any relief.

The writ of *certiorari* is accordingly dismissed, with costs.