**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0426-18T3

PETER AULERT, MARILYNNE
AULERT and PMA MOTORS,
INC., t/a ROBINSON'S GARAGE,

     Plaintiffs-Appellants,

v.

MAYOR and TOWNSHIP
COMMITTEE OF BRICK, NJ,

     Defendants-Respondents.

_____

Argued October 15, 2019 – Decided December 4, 2019

Before Judges Sumners and Natali.

On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Docket No. L-1590-18.

Maurice J. Maloney argued the cause for appellants (Maurice J. Maloney, attorney; Jeff Edward Thakker, of counsel; Maurice J. Maloney, on the briefs).

Kevin B. Riordan argued the cause for respondents (Kevin B. Riordan LLC, attorneys; Kevin B. Riordan, Gary P. Mc Lean, and Dina R. Khajezadeh, on the brief).

PER CURIAM

Plaintiffs Peter and Marilynne Aulert, and PMA Motors, Inc., t/a Robinson's Garage, appeal from two August 17, 2018 Law Division orders that denied their request for injunctive relief and dismissed their complaint in lieu of prerogative writs with prejudice pursuant to Rule 4:6-2(e). After considering the record against the relevant legal principles and applicable standard of review, we vacate the August 17, 2018 orders and remand for further proceedings.

I.

The facts underlying this appeal relate to the denial by defendants Mayor and Township Committee of Brick (collectively Township) of plaintiffs' 2018 application for a license to sell motor vehicles. Before its 2018 denial, the Township had granted plaintiffs' license applications for twenty-eight consecutive years.

The Township adopted ordinances, codified in Chapter 466 of the Township's Municipal Code, to regulate motor vehicle sales and storage

pursuant to N.J.S.A. 40:52-1 and -2.[1]  The ordinances proscribe "any person, persons, firm, partnership[,] or corporation [from] engag[ing] in the business of selling or exchanging motor vehicles without . . . obtain[ing] a license . . . ."  An application for such a license must contain information related to the identity of the applicant and "[t]he location of the proposed licensed premises," and must be submitted annually to the Township Clerk along with a licensing fee.

The ordinances also limit the number of licenses issued by the Township to fifteen "Category [One] licenses" and two "Category [Three] licenses."[2]  After a license is granted, the Township Council (Council) may revoke it "at any time

---

[1]  The New Jersey State Legislature expressly permits municipalities to regulate "[a]utomobile garages [and] dealers in second-hand motor vehicles."  N.J.S.A. 40:52-1(e).

[2]  A Category One license permits "[t]he offering of more than one motor vehicle at any one time for sale or exchange by exhibiting, storing, parking, locating[,] or keeping such motor vehicles on any premises."  A Category Two license allows "[t]he offering of more than one motor vehicle at any one time for sale or exchange where any such motor vehicles are not exhibited, stored, parked, located[,] or kept upon those premises from which such motor vehicles are offered for sale or exchange."  There does not appear to be a limit on the number of Category Two licenses issued by the Township.  Finally, a Category Three license enables the holder to offer "more than one motorcycle, all[-]terrain vehicle[,] or personal watercraft at any one time for sale or exchange by exhibiting, storing, parking, locating, or keeping such motor vehicles on any premises."  While unspecified in the parties' briefs on appeal, we glean from the record that the licenses granted to plaintiffs were Category One licenses.

3

for any violation of this chapter or for other legal cause, after notice to the licensee and a hearing."

When making its determination under Chapter 466, the Council is charged with "examin[ing] the qualifications of . . . applicant[s] . . . to determine if [the] applicant . . . would conduct the licensed activity in a lawful manner . . . ."  The Council considers the following factors:

> (1) The Zoning Ordinance of the Township[;]
> (2) The Uniform Construction Code of the Township[;]
> (3) Any and all general laws and public health statutes and codes of the State of New Jersey applicable to municipalities[;]
> (4) The report of the Board of Fire Commissioners[;]
> (5) Reports of all Township officers, where requested by the [Council][;]
> (6) The existence of any convictions of any crimes, the reasons therefor and the demeanor of the applicant subsequent thereto, only where required pursuant to state statutes[; and]
> (7) The license history of the applicant; whether such person, in previously obtaining a license in this Township or any other municipality, has had such license rejected or suspended, the reasons therefor and the demeanor of the applicant subsequent to such actions; the timeliness of past applications for licenses; and the applicant's continued compliance with all license requirements after having been granted any previous licenses.

Further, as noted, because Township motor vehicle sales licenses "expire on [December 31] of [the] year in which said license was issued," the municipal

ordinance requires that licenses be renewed each year by filing another application and paying a new license fee. The Council considers the same factors noted above when issuing license renewals.

In December 1987, plaintiffs purchased property in the Township, which had been used by the previous owner for repairing and selling used cars. When plaintiffs purchased the property, they applied for and were granted a license to sell automobiles in the Township. After the purchase, according to the verified complaint, plaintiffs "continued to use the property for the same purposes" as the previous owners.

Seven years later, a lengthy series of disputes between the parties began. Specifically, in 1994, the Township issued plaintiffs a municipal summons for storing "too many unregistered cars" on the property. The summons was later dismissed by the Township Municipal Court.

The following year, the Township complained regarding excessive vegetation on the property. According to plaintiffs, the dispute was "amicably resolved" by plaintiffs "replac[ing] vegetation, install[ing] fencing and a pole . . . and agree[ing] to obtain a permit from the Ocean County Soil Conservation District." As a result, the Township renewed plaintiffs' license for the 1995 calendar year.

After a fifteen-year period in which plaintiffs' license was repeatedly renewed without issue, in December 2010, the Township issued a violation notice to plaintiffs for storing "too many unregistered vehicles." The Township also notified plaintiffs that it would not recommend renewal of plaintiffs' 2011 license because inspection reports were "not favorable." Subsequently, in March 2011, the Township issued plaintiffs a municipal court summons again for keeping "too many unregistered vehicles" on the property, which corresponded with the December 2010 violation notice. After plaintiffs removed ten of sixty-eight vehicles, the municipal court summons was dismissed and the Township renewed plaintiffs' 2011 license.

A number of months later, in October 2011, the Township issued plaintiffs another municipal court summons alleging that plaintiffs were unlawfully "operating a junkyard without a permit," in violation of Section 237-3 of the Township's Municipal Code. The issue was settled when plaintiffs agreed to "install[] fencing, obtain[] a new survey, relocat[e] certain cars on the property[,] and [re-paint] driveway striping and lettering." Shortly thereafter, the Council renewed plaintiffs' 2012 license.

Then, in December 2015, an official from the Township Code Enforcement Office inspected the property and advised plaintiffs "that every

vehicle had to be removed . . . ."  Shortly thereafter, Code Enforcement sent plaintiffs a letter stating that it believed plaintiffs were "running a junk yard," and that plaintiffs must discuss the issue with the Township "before [the] application for renewal of [plaintiffs'] dealership license for 2016 would be presented to the Township . . . for consideration."

Plaintiffs took no formal action against the Township at that time. However, Peter Aulert certified in support of plaintiffs' opposition to the Township's cross-motion that over the ensuing months following the December 2015 letter, he "left numerous messages" and "made ongoing attempts to schedule a meeting" with the Township.  Aulert stated that "no one from [the Township] showed up for the appointment[s] or called to reschedule."  In March 2016, plaintiffs sent a notice of tort claim, pursuant to N.J.S.A. §§ 59:8-3 to -8, to the Township, "citing [his] damages as a result of the refusal to act by the [Township] on [his] 2016 license renewal application . . . ."  The Township never formally responded to plaintiffs' notice.

In June 2016, a Township official visited the property and informed plaintiffs of a 1969 building resolution and 1985 subdivision documents which established that plaintiffs' use of the property was noncompliant with the Township's municipal ordinances.  Three days later, a representative of the

Township Code Enforcement Office contacted plaintiffs and stated he "had the minutes from the 1969 Board of Adjustment hearings to build [a] garage and the Resolution from the 1985 Planning Board meeting for the subdivision" of the property, and that plaintiffs were in violation of conditions contained in the minutes, including a provision in the 1969 resolution which stated that "[t]he sale of motor vehicles shall not be permitted" on the property. Plaintiffs requested "details and copies of the documents," and while the Township provided plaintiffs with the documents shortly thereafter, the Township did not provide a list of "demands to correct the situation" that plaintiffs also requested.

In December 2016, plaintiffs met with various Township officials who informed them that they "had to meet [the Township's] conditions before [the] application would be considered," but according to plaintiffs, the Township still failed to provide a written list of concerns at the property that needed to be rectified. At another meeting shortly thereafter, the Township's Business Administrator informed plaintiffs that the Township "would give [them] 'back' [their] dealership license if [they] agreed to park only [six] cars in front of the building," but then "added more conditions which would have caused [them] to lose 3900 square feet of parking area . . . ."

8

Throughout 2017, plaintiffs "tried to negotiate some type of agreement which would satisfy the [Township] and allow [plaintiffs] to secure the renewal of [the] dealership license," but plaintiffs were "unable to secure a concise written list" of the Township's conditions. In December 2017, the Township again sent a letter to plaintiffs enclosing the 1969 Township resolution which stated that "[t]he sale of motor vehicles shall not be permitted" on plaintiffs' property.

In March 2018, a Township official met with plaintiffs and informed them that: 1) because the license was "renewed annually," the Township "had the right to deny the license renewal," and 2) plaintiffs had to remove all motor vehicles from the property. The next month, plaintiffs formally submitted a license application for the 2018 calendar year, which, according to a Township resolution adopted on May 8, 2018, was denied "upon review of the factors set forth in Section 466-5 . . . ." The resolution further stated that the Township based its denial "on the repeated and continuous failures of the owners to address the problems with the existing site conditions and numerous violations on the site."

Approximately one month later, plaintiffs filed an order to show cause and a verified complaint in lieu of prerogative writs, pursuant to Rule 4:69-1,[3] in the Law Division[4] seeking injunctive relief, the "issuance of the renewal licenses . . . without restrictions[,]" and "authority to continue to legally . . . [sell] motor vehicles in [the] Township" as well as damages, attorneys' fees, and costs.

In their verified complaint, plaintiffs alleged that the Township: 1) violated plaintiffs' right to due process by failing to provide them with "advance notice that [plaintiffs'] application would be considered" on the date the Council denied the 2018 application; 2) committed inverse condemnation by depriving "[p]laintiffs of all or substantially all of the beneficial use" of the property; 3) harassed plaintiffs by "consistently demand[ing] more than what was demanded in the last settlement" before considering plaintiffs' license application; 4) arbitrarily and capriciously denied plaintiffs' 2018 license application; 5) selectively enforced Section 466-5 by granting licenses to "other business

---

[3] An action in lieu of prerogative writs permits a party "to seek 'review, hearing and relief' in the Superior Court of all actions of municipal agencies." Rivkin v. Dover Twp. Rent Leveling Bd., 143 N.J. 352, 378 (1996) (quoting N.J. Const. art. VI, § 5, ¶ 4); see also R. 4:69-1.

[4] The initial verified complaint was incorrectly labeled as filed in the Chancery Division, but was amended on June 28, 2018 to accurately reflect its filing in the Law Division.

locations . . . in the Township . . . which [had] more vehicles on [the properties],

. . . had certain vehicles on the properties for extended periods of time[,] and/or

[were] more crowded with cars" than plaintiffs' property; and 6) exceeded

municipal authority by failing to follow "standards or procedures . . . prior to

denying renewal of a license to sell motor vehicles."

On July 11, 2018, the trial judge signed an order to show cause as a

summary proceeding, pursuant to Rule 4:67-1(a).[5]  Before the hearing on the

---

[5]  An order to show cause "may properly be utilized where a party seeks some
form of . . . interim relief such as the preservation of the status quo pending final
hearing of the cause," pursuant to Rules 4:52-1 and -2, or "as initial process in
those actions in which the court is permitted by statute or rule to proceed in a
summary manner," pursuant to Rule 4:67-1(a).  Solondz v. Kornmehl, 317 N.J.
Super. 16, 20 (App. Div. 1998).  It does not appear from the record before us
that plaintiffs requested to proceed summarily, nor that the court did so.
Moreover, as it noted in the order to show cause, the court determined that the
case would be "commenced . . . as a summary proceeding pursuant to [Rule]
4:83-1 . . . ."  That Rule, however, addresses summary proceedings in probate
actions and, therefore, has no application here.  Further, it appears that counsel
submitted, and the court signed, an order to show cause inconsistent with the
recommended forms from the Administrative Office of the Courts, see Order to
Show Cause Summary Action (rev. Sept. 1, 2019),
https://njcourts.gov/forms/10704_osc_sum_action.pdf;  Order to Show Cause
Preliminary Injunction Pursuant to Rule 4:52 (rev. Sept. 1, 2019),
https://www.njcourts.gov/forms/10705_osc_prelim_injunct.pdf; Order to Show
Cause with Temporary Restraints Pursuant to Rule 4:52 (rev. Sept. 1, 2019),
https://njcourts.gov/forms/10308_osc_temp_restrain.pdf.  We nevertheless
interpret the order to show cause and verified complaint to seek, in part, interim
relief as authorized by Rule 4:52.

11

order to show cause, the Township filed a certification in opposition to plaintiffs' application for preliminary restraints and also filed a cross-motion to dismiss.

Prior to the exchange of any discovery, the court heard oral arguments on August 17, 2018 to address plaintiffs' request for injunctive relief and the Township's cross-motion to dismiss. Plaintiffs argued that, under Crowe v. De Gioia, 90 N.J. 126 (1982), they would suffer irreparable harm because the Township's nonrenewal of plaintiffs' municipal motor vehicle sale license would "jeopardize[] [plaintiffs'] retention of [their] state-held motor vehicle sale license" and that they would lose their reputation, which they considered "something greater" than monetary damages. Plaintiffs conceded, however, that while they possessed "no vested right to have [the license] renewed[,] . . . it also cannot be revoked or denied arbitrarily."

In response, the Township argued that plaintiffs were not irreparably harmed by the denial of the license and that the status quo was that plaintiffs had no "license to sell motor vehicles . . . because the license . . . expired." Further, the Township argued that "the sale of motor vehicles is prohibited at [plaintiffs' property] by [the Township] resolution from 1969."

After oral arguments concluded, the court issued an oral decision and conforming orders denying plaintiffs' request for injunctive relief and granting

the Township's application to dismiss plaintiffs' complaint with prejudice. In reaching its decision, the court considered the 1969 Township resolution. In addition, the court found that "Section 466-5 of the ordinance provides for the standards for determining qualifications for a license and . . . that this is an annual license . . . expir[ing] on [December 31] of each year." The court also determined that plaintiffs' license "expired at the end of 2016," was not renewed in 2017, and the Township denied the 2018 application "because they were not happy with the conditions of the property."

Accordingly, the court ruled that it was within the Township's discretion "for whatever reason . . . to deny the application for renewal of the license." The court explained that because the license was renewable annually, "[t]here [was] no right to have it renewed," that "the record does not indicate that . . . there was any ulterior motive" on the part of the Township, and "that it is within the discretion of the Township to renew . . . the license for the sale of motor vehicles . . . ." This appeal followed.

On appeal, plaintiffs argue that: 1) the trial court improperly dismissed plaintiffs' complaint with prejudice pursuant to Rule 4:6-2(e); 2) the trial court erroneously denied plaintiffs' request for a preliminary injunction, and 3) we

13                                                                      A-0426-18T3

should "exercise original jurisdiction and provide interim relief for purposes of [any] remand."

## II.

The decision of a municipal board is "presumed to be valid and the party attacking such action has the burden of proving otherwise." N.Y. SMSA Ltd. P'ship v. Bd. of Adjustment of Twp. of Bernards, 324 N.J. Super. 149, 163 (App. Div. 1999) (citations omitted). Courts provide deference to the municipality's broad discretion and reverse only where the municipal action was "arbitrary, capricious[,] or unreasonable." Cell S. of N.J., Inc. v. Zoning Bd. of Adjustment, 172 N.J. 75, 81 (2002) (quoting Medici v. BPR Co., 107 N.J. 1, 15 (1987)). A municipal board "acts arbitrarily, capriciously, or unreasonably if its findings of fact in support of [its decision] are not supported by the record . . . or if it usurps power reserved to the municipal governing body or another duly authorized municipal official." Ten Stary Dom P'ship v. Mauro, 216 N.J. 16, 33 (2013) (citations omitted).

While a municipal board's factfinding is entitled to substantial deference and presumed to be valid, Burbridge v. Twp. of Mine Hill, 117 N.J. 376, 385 (1990), its conclusions of law are reviewed de novo. Nuckel v. Little Ferry Plan. Bd., 208 N.J. 95, 102 (2011) (citation omitted). Finally, "[w]hen reviewing the

decision of a trial court that has reviewed municipal action, we are bound by the same standards as was the trial court." Grubbs v. Slothower, 389 N.J. Super. 377, 382 (App. Div. 2007) (citation omitted).

As noted, in plaintiffs' first point on appeal, they contend the court committed error in dismissing the verified complaint. Specifically, plaintiffs argue they sufficiently pled that: 1) the Township violated their due process rights by failing to provide them a hearing prior to the denial of the 2018 license application; 2) the Township acted with an "ulterior motive" in denying the license, "and that the decision (whatever the motive) was arbitrary, capricious[,] and unreasonable"; and 3) the trial court misapplied the Rule 4:6-2 standard by relying on material outside the pleadings and failing to convert the matter to one for summary judgment.

We reject plaintiffs' claims that the Township violated their procedural due process rights because the Township failed to provide them with a hearing prior to denying their 2018 license application. Although we acknowledge that "[a]n occupational license is in the nature of a property right," Santaniello v. N.J. Dep't of Health & Sr. Servs., 416 N.J. Super. 445, 460 (App. Div. 2010) (quoting Graham v. N.J. Real Estate Comm'n, 217 N.J. Super. 130, 135 (App. Div. 1987)), "[t]here is no protectable property right in continuing or future

15

[licensure] since any existing property interest in the [license] is extinguished upon its expiration." Id. at 459. Accordingly, "constitutional due process protects against only the improper suspension or revocation of a license . . . ." Id. at 460 (quoting Limongelli v. N.J. State Bd. of Dentistry, 137 N.J. 317, 326 (1993)).

It is not disputed that plaintiffs' license was neither suspended nor revoked. Even if we assume, as the trial court did in its oral decision, that "in 2016[,] [plaintiffs] had a license," their failure to apply for a license renewal for 2017 pursuant to Section 466-5 resulted in the expiration of the license as of December 31, 2016. Therefore, plaintiffs possessed no property right that required a hearing prior to denial of their 2018 application. The Township's actions in denying the 2018 license, however, still required a supportable legal and factual basis, and could not be denied on an arbitrary and capricious basis.

We agree, however, with plaintiffs' assertion that the court committed error when it dismissed the amended verified complaint with prejudice. After conducting an appropriate Rule 4:6-2(e) analysis, consistent with the standard detailed in Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989), we conclude plaintiffs' amended verified complaint sufficiently pled colorable claims against the Township.

In reviewing a dismissal for failure to state a claim under Rule 4:6-2(e), our inquiry is focused on "examining the legal sufficiency of the facts alleged on the face of the complaint." Ibid. Thus, we must "search[] the complaint in depth and with liberality to ascertain whether the fundament of a cause of action may be gleaned even from an obscure statement of claim . . . ." Ibid. (quoting Di Cristofaro v. Laurel Grove Mem'l Park, 43 N.J. Super. 244, 252 (App. Div. 1957)).

Generally, when the trial court has considered matters outside the pleadings, the motion to dismiss on the failure to state a claim becomes one for summary judgment. See R. 4:6-2. Our Supreme Court has nevertheless stated that, "[i]n evaluating motions to dismiss, courts consider 'allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim.'" Banco Popular N. Am. v. Gandi, 184 N.J. 161, 183 (2005) (quoting Lum v. Bank of Am., 361 F.3d 217, 221 n.3 (3d Cir. 2004)). "The purpose of this rule is to avoid the situation where a plaintiff with a legally deficient claim that is based on a particular document can avoid dismissal of that claim by failing to attach the relied upon document." Lum, 361 F.3d at 221 n.3; see also In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) ("[T]he primary problem raised by looking

to documents outside the complaint – lack of notice to the plaintiff – is dissipated 'where plaintiff has actual notice . . . and has relied upon these documents in framing the complaint.'" (quoting Watterson v. Page, 987 F.2d 1, 3-4 (1st Cir. 1993))). Thus, in reviewing a motion under Rule 4:6-2(e), a court may consider documents referred to in the complaint, matters of public record, or documents explicitly relied on in the complaint, without converting the motion to dismiss into one for summary judgment. See N.J. Citizen Action, Inc. v. Cty. of Bergen, 391 N.J. Super. 596, 605 (App. Div. 2007).[6]

Applying the Rule 4:6-2 standard, we conclude that plaintiffs' amended verified complaint pled a "fundament of a cause of action," Printing Mart-Morristown, 116 N.J. at 746, as to whether the Township's decision to deny plaintiffs' 2018 license was arbitrary, capricious, or unreasonable. See Cell S. of N.J., 172 N.J. at 81. The Township's 2018 resolution merely stated that it based its denial "on the repeated and continuous failures of the owners to address the problems with the existing site conditions and numerous violations on the site."

---

[6] Based on the court's oral decision, it is clear that it relied on the 1969 Township resolution. As a public record, the court was permitted to rely on that document without converting defendant's application to a summary judgment motion under Rule 4:46-2. Banco Popular N. Am., 184 N.J. at 183.

Plaintiffs' complaint challenges the Township's finding by alleging that Section 466-5 "contains vague standards" upon which the Township used to base its improper denial of plaintiffs' application. Indeed, plaintiffs note in their complaint that the Township based the denial "in part, on 'the repeated and continuo[u]s failures of [plaintiffs] to address the problems with the existing site conditions and numerous violations on the site.'"

Plaintiffs aver, however, that they "had not been issued any [s]ummons which [was] not settled and did not have any 'violations' issued for the premises since 2011." Further, despite the issues with plaintiffs' property, the Township repeatedly granted plaintiffs licenses until 2016, when it took no formal action on their application. Moreover, plaintiffs contend in their complaint that despite their consistent adherence "to the terms of the multiple undocumented 'settlements' between the parties, the [Township] [has] consistently demanded more than was demanded" in previous settlements before renewing plaintiffs' license. Finally, plaintiffs argue that the Township's 2018 resolution denying their application "made no mention of a 1969 variance condition" and that its "after-the-fact reliance on that document tends to prove . . . arbitrary and bad-faith bases for" the Township's action.

A-0426-18T3

In response, the Township argues that: 1) because plaintiffs possessed "no 'right' to the issuance of a new license," no cause of action was suggested by the complaint; 2) even if a right existed, the 1969 Township resolution "took that right away from" plaintiffs; and 3) that it "considered the factors . . . pursuant to [Section] 466-5 and . . . appropriately denied [plaintiffs'] application for a new license . . . ."

As noted, the decision to deny plaintiffs such a license cannot be arbitrary, capricious, or unreasonable. See Cell S. of N.J., 172 N.J. at 81. Plaintiffs sufficiently pled a cause of action by alleging that the Township acted arbitrarily and capriciously in denying its 2018 application. For example, it is unclear, particularly in light of the Township's acquiescence and resolution of prior disputes with plaintiffs, which specific "site conditions and . . . violations" the Township relied upon and what particular standards, if any, plaintiffs were required to meet in order to obtain a license.

Further, we cannot discern what weight the Township gave to the 1969 resolution when it denied plaintiffs' license. Although the 2018 resolution makes no mention of the 1969 resolution, the Township Code Enforcement officer relied extensively on the resolution before the Township issued its 2018 resolution. Moreover, the court also relied on the 1969 resolution in its oral

decision.[7]  Accordingly, we vacate the court's August 17, 2018 order dismissing plaintiffs' verified complaint with prejudice and remand for further proceedings to sufficiently develop the record to determine whether the Township arbitrarily and capriciously denied plaintiffs' 2018 license application.

III.

Plaintiffs next assert that the trial court abused its discretion when it denied their application for injunctive relief.  We review a trial court's decision to deny plaintiffs' application for a preliminary injunction to determine if the trial court abused its discretion.  Brown v. City of Paterson, 424 N.J. Super. 176, 182 (App. Div. 2012) (citing Rinaldo v. RLR Inv., LLC, 387 N.J. Super. 387, 395-96 (App. Div. 2006)).  Abuse of discretion exists "when a decision is made without a rational explanation, inexplicably depart[s] from established policies,

---

[7] On remand, the court should also address plaintiffs' argument on appeal "as to whether the municipality is estopped from revoking a license based on an alleged noncompliance with conditions."  (citing Tillberg v. Kearny Twp., 103 N.J. Super. 324, 337-38 (Law Div. 1968)).  According to plaintiffs, the 1969 resolution "may also be the subject of 'changed circumstances or other good cause warranting a reconsideration by the local authorities.'"  (quoting Sherman v. Borough of Harvey Cedars Bd. of Adjustment, 242 N.J. Super. 421, 429 (App. Div. 1990)).  The court should determine whether, by its inaction regarding the 2016 license application, coupled with its granting of plaintiff's license for the twenty-eight prior years, the Township was estopped from denying plaintiffs' 2018 license application, and to what extent the 1969 Township resolution formed a basis for its decision.

A-0426-18T3

or rest[s] on an impermissible basis." Feigenbaum v. Guaracini, 402 N.J. Super. 7, 17 (App. Div. 2008) (quoting Flagg v. Essex Cty. Prosecutor, 171 N.J. 561, 571 (2002)). We should determine "whether there are good reasons . . . to defer to the particular decision at issue." Flagg, 171 N.J. at 571. Reversal of the trial court's order is proper "only if it 'was not premised upon consideration of all relevant factors, was based upon consideration of irrelevant or inappropriate factors, or amounts to a clear error in judgment.'" McDaniel v. Man Wai Lee, 419 N.J. Super. 482, 498 (App. Div. 2011) (quoting Masone v. Levine, 382 N.J. Super. 181, 193 (App. Div. 2005)).

A party seeking an injunction must show, by clear and convincing evidence, that 1) there is a likelihood of imminent and irreparable harm; 2) there is a settled underlying legal right; 3) the material facts are not entirely controverted and there is a reasonable likelihood of success on the merits; and 4) a balancing of hardships favors the moving party. Crowe, 90 N.J. at 132-34. "Harm is generally considered irreparable in equity if it cannot be redressed adequately by monetary damages." Id. at 132-33. As for where there is doubt regarding the moving party's ultimate success on the merits, a court has discretion to grant a preliminary injunction to preserve the status quo where "a balancing of the relative hardships substantially favors the movant . . . ." Waste

Mgmt. of N.J., Inc. v. Morris Cty. Mun., 433 N.J. Super. 445, 454 (App. Div. 2013).

In its oral decision, the court relied exclusively on a single Crowe factor to deny plaintiffs' request for interim injunctive relief, concluding plaintiffs failed to establish a reasonable probability of success on the merits. That determination was solely based on the court's statements that "for whatever reason, the Township [did] not want to continue" granting plaintiffs a license, and that it was "within [the Township's] discretion . . . to deny the application." The court made no specific finding as to whether plaintiffs suffered irreparable harm, whether there was a settled underlying legal right, or whether the balance of hardships favored plaintiffs. Instead, the court merely deferred to the reasoning of the Township in finding that plaintiffs had no "reasonable prospect of success on the merits" without examining the remaining Crowe factors. Further, as we have concluded that the reasons underlying the Township's determination are unclear and the matter should be remanded for the purpose of developing a more complete record, we similarly vacate the court's August 17, 2018 order denying plaintiffs' request for injunctive relief.

We reject, however, plaintiffs' request that we exercise original jurisdiction and order interim injunctive relief pending resolution of the issue

A-0426-18T3

on remand. Under Rule 2:10-5, appellate courts have discretion to exercise "original jurisdiction as is necessary to the complete determination of any matter on review." However, where the factual record is insufficiently developed, exercise of original jurisdiction is inappropriate. See, e.g., Price v. Himeji, LLC, 214 N.J. 263, 294-95 (2013); Brunswick Bank v. Heln Mgmt., 453 N.J. Super. 324, 334 (App. Div. 2018). As noted, we are remanding for the purpose of developing the necessary factual record and, therefore, decline to exercise original jurisdiction.

Accordingly, we vacate the August 17, 2018 orders and remand for further proceedings to permit plaintiffs to take discovery regarding the relevant factual issues supporting the denial of their 2018 license application. On any renewed application, the Township should identify specifically the "repeated and continuous problems and violations," along with any other factor upon which it relied in reaching its decision. Nothing in our decision should be interpreted as expressing our view on the result of the remanded proceedings.

Vacated and remanded for further proceedings. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

24

A-0426-18T3