JOHN T. DICKINSON ET AL., PROSECUTORS, v. THE INHABITANTS OF THE CITY OF PLAINFIELD ET AL., RESPONDENTS.

Decided February 5, 1935.

Before Justice CASE, pursuant to the statute.

For the prosecutors, *Andrew V. McDonough*.

For the respondents, *Spaulding Frazer*.

CASE, J.   The writ brings up an order of the board of adjustment of the city of Plainfield revoking a permit granted by the building inspector of that city.   The record as placed before me is not technically perfect, but I shall endeavor to determine the issue as I understand it.   The prosecutors include the owners and the mortgagee of the building involved, as well as the tenants under a lease hereinafter mentioned.   All of these interests hinge upon the rights of the owners whom I shall refer to as the prosecutors.

In 1926 prosecutors acquired a property at the corner of Park avenue and Seventh street in the city of Plainfield and constructed thereon a two-story structure with frontages on Park avenue and on Seventh street.   The Park avenue frontage was divided between four stores and, situated at the immediate corner, a large room used for the display and sale of Packard automobiles.   There was no automobile entrance on that frontage.   At the rear, opening on Seventh street but under the same roof, was a garage and service station fitted to receive cars from Seventh street either for servicing, repairs or storage.   There was a doorway between this part of the building and the automobile salesroom of sufficient size to permit automobiles to be taken to and from the floor of the salesroom.   The entire second floor, accessible from the garage, was devoted to various automobile uses, but there was nothing in the rather beautiful Park

avenue facade to indicate that the building was used for other than the mentioned sales purposes. The use of the service station has been continuous. The prosecutors lost the automobile agency, and during more recent years the corner salesroom has been used for other commercial purposes. One June 4th, 1934, the prosecutors entered with a prospective tenant into a ten-year lease based upon the assumption that they would turn the Park avenue frontage into a modern service station. On the same day they had sought and obtained a permit from the building inspector of the city of Plainfield to make the necessary alterations in the building and had also applied for and obtained a permit for gasoline tanks and gasoline pumps under the volatile liquid ordinance. The work was contracted for on June 9th and was begun forthwith. There seems to have been nothing to bring to the attention of other interested property owners that a service station was to be constructed and maintained on the Park avenue frontage until Saturday, June 16th, 1934, when a sign was placed upon the building indicating that after alterations were completed the premises would be put to that use by the American Garage Company. On the following Monday a group of neighboring owners appeared before the Plainfield Council to voice their protest. The board of adjustment met two days later to consider the matter, a petition of appeal having meanwhile been filed with the secretary of that board. The board determined that the permit signed by the building inspector was to set up a non-conforming use where a conforming use had theretofore existed, that that officer was without power to grant such a permit and that his action should be set aside. The board further determined, for reasons given, to refuse such a permit. Proceedings have been prosecuted diligently from that time forward.

The question is whether the building inspector's permit was properly revoked and a permit by the board of adjustment lawfully denied.

It is conceded that the building is in a business zone and that the prosecutors had, before and at the time of the pas-

sage of the present zoning ordinance, October 3d, 1933, set up and maintained a non-conforming use as to a service station on the Seventh street frontage to the extent above described.

The zoning ordinance provided in section 3: "In a business zone no building or premises shall be used and no building shall be erected or altered which is arranged, intended or designed to be used for any of the following specified trades, industries or uses: * * * 13. Motor vehicle service station except as permitted in section 13." Section 13 provides for the appointment of a board of adjustment, the power to the board in appropriate cases and subject to appropriate conditions and safeguards to make special exceptions to the terms of the ordinance in harmony with the general purpose and intent and in accordance with the general or specific rules therein contained. That section further provided that appeals may be taken to the board of adjustment by any person aggrieved in the premises by the act of a public officer. The prosecutors undeniably planned to alter their building with the intention of using it for, and so that it would be designed to be usable as, a motor vehicle service station at the Park avenue frontage. It is plain that unless they had some right that could stand up against the provisions of the ordinance the power to grant permission to make such an alteration lay with the board of adjustment and not with the building inspector.

It is first contended by the prosecutors that they had such a right in the earlier non-conforming use above mentioned. Zoning Act, *Pamph. L.* 1928, *ch.* 274, § 11. In other words, they argue that uses which were thoroughly hidden from Park avenue and which had entrance and exit solely on Seventh street may be extended, against the ordinance provision, to justify the tearing out of the Park avenue walls, up to the second story, installing the usual service station equipment of oil and gas tanks and the like and converting adjacent portions of the Park avenue sidewalk into entrance and exit driveways; and in support of their argument they rely chiefly upon *Frank J. Durkin Lumber Co.* v. *Fitzsimmons,*

106 *N. J. L.* 183; 147 *Atl. Rep.* 555; *Lamb* v. *McKee,* 10
*N. J. Mis. R.* 649; 160 *Atl. Rep.* 563; *Edwards* v. *Derrick-
son,* 28 *N. J. L.* 39; *Provident Institution for Savings* v.
*Castles,* 11 *N. J. Mis. R.* 773; 168 *Atl. Rep.* 169. Those de-
cisions do not, in my opinion, reach the facts of the present
case. In the Durkin Lumber Company case, for instance,
the property was applied to' no use except that of the pro-
hibited business, and that being so, it was held, the use being
forbidden by the zoning ordinance, that it was a non-con-
forming use which, having been in existence at the time
the ordinance became effective, could lawfully be continued.
At the time of the passage of the Plainfield zoning ordinance
the portion of the premises now sought to' be devoted to a
forbidden use completely conformed to the requirements
of the ordinance. Material and distinguishing facts of the
present case are that the desired use entails sidewalk and
curb changes, some vehicular interference with pedestrians
in the use of the sidewalk, disruption of curb parking at the
*locus,* and a certain breach in the extension of normal retail
business; also that the established non-conforming use af-
fected in those respects only Seventh street, and that the
physical aspect of Seventh street and the functions of that
thoroughfare differ from those of Park avenue. Even if
we assume that prosecutors' property is so' integrated as to
form a unit in the development and expansion of the non-
conforming use, nevertheless that use must, I think, so far
as street access is concerned, be regarded as a Seventh street.
enterprise. The distinction is not arbitrary. The right of
the prosecutors to continue, or indeed to expand, the busi-
ness of servicing and garaging automobiles through the fa-
cilities of a Seventh street entrance does not entitle them,
as of right, and against the ordinance provision, to rip out
the structure on the Park avenue frontage and there set up
a use to which that location has never been put. Prosecutors
do not dispute the propriety of the ordinance provision;
they simply try to put themselves outside its purview. I
think that to the extent mentioned they are subject to the
ordinance, and I conclude, therefore, that no lawful permit

could be had for so altering the building structure as to fit it for a motor vehicle service station on the Park avenue frontage without affirmative action by the board of adjustment.

It is next said by the prosecutors that they acquired vested rights when the building inspector's permit had been issued and acted upon and that it is not within the power of the municipality to limit the rights so acquired; citing *Freeman* v. *Hague,* 106 *N. J. L.* 137; 147 *Atl. Rep.* 553. That decision bore upon a building permit granted, before the passage of the Zoning act (*Pamph. L.* 1928, *ch.* 274), by a duly qualified municipal body. In the present case the permit was issued by an officer who assumed, but did not have, the requisite authority. I do not understand it to be the law that a property owner may obtain from an unauthorized official a permit to do a forbidden act and then, by proceeding quickly with the work, forestall consideration by the lawfully designated tribunal.

Prosecutors finally contend that the document filed with the board and purporting to be an appeal is not an appeal of the type provided in the Zoning act, *supra,* and that the board is therefore without jurisdiction, first, because the appeal is from a permit to erect a building when in fact the permit was not to erect but to make alterations, repairs and additions to a building already erected and, second, that the appeal contemplated in section 9 of the statute was required by the act to be taken within a reasonable time. I find that the appeal manifested fully what it related to and that it was taken within a reasonable time.

It will be observed that the points argued by prosecutors are made to rest upon—and in this numerical order—(1) a right said to have been acquired by an earlier, non-conforming use, (2) a right said to have vested on the issuing of the building inspector's permit and the act of the prosecutors in proceeding with the work in dependence thereon, and (3) a faulty form of appeal. The form and substance of the ordinance are not attacked. Arbitrary and unreasonable application of the ordinance provision as against neighborhood conditions is not charged.

The action of the adjustment board in setting aside the inspector's permit and in denying permission on its own authority was valid. The writ is discharged, with costs.

Two things should be said in *addendum:*

The writ seeks to review an order. I find none; but I have assumed the existence of an order in line with the opinion written on behalf of the board of adjustment.

On the question of conforming or non-conforming use I have reached my conclusions solely on the changed use of the Park avenue frontage. The case does not come before me on the issue extending the non-conforming use along Seventh street and I pass no opinion thereon. After the action of the board of adjustment the prosecutors, under authority of a restraint order by the Court of Chancery, completed the structural changes in the building and are now operating the business as planned. Under the circumstances I think that the present determination should be without prejudice to such further proceedings as prosecutors may be advised are proper to frame and try out the issue of the changes in the Seventh street frontage.