JOHN T. DICKINSON ET AL., PROSECUTORS AND RELA-
TORS, v. THE INHABITANTS OF THE CITY OF PLAIN-
FIELD ET AL., DEFENDANTS AND RESPONDENTS.

Submitted October 4, 1938—Decided February 6, 1939.

Before Justices CASE, DONGES and PORTER.

For the prosecutors and relators, *McDonough & McDonough*
and *Merritt Lane.*

For the defendants and respondents, *William Newcorn.*

The opinion of the court was delivered by

DONGES, J. Upon notice, application is made for a writ of *certiorari* to review the action of the Board of Adjustment of the inhabitants of the city of Plainfield on August 26th, 1938, denying the application of Dickinson and Freeburn, owners, and American Garage, Inc., tenant, that the board grant an exception to the zoning ordinance by permitting the use of premises Nos. 620-630 Park avenue, Plainfield, as a drive-in motor vehicle and gasoline service station and that a certificate of occupancy for said purpose be granted by said board, or that said board recommend in writing to common council that the use to which the premises are now put be permitted to continue; and to review the action of the board denying the appeal of applicants from the refusal of the city engineer to grant a permit for the alteration of said premises and a permit to continue said use of the premises and a certificate of occupancy for said premises; and to review the action of the board in refusing to reverse the action of the city engineer in refusing said permits and certificate to said applicants; and to review all the proceedings before said board with respect to said applications and appeals.

At the same time, notice of application for three writs of *mandamus* to compel the actions above mentioned was given, and the several matters are submitted together.

The record discloses that on June 4th, 1934, application was made to the building inspector of Plainfield for a permit to alter the building in question, which is located at the corner of Park avenue and West Seventh street, by removing the showroom fronting on Park avenue and thus extending the service station in the rear of the showroom to include the showroom, and making openings on the Park avenue front and permitting access to automobiles across the Park avenue sidewalk, and a separate permit for the installation of gasoline storage tanks and dual pumps in the section formerly used as a showroom. The part theretofore used as a gasoline service station had been accessible from the West Seventh street front only. The building inspector granted the permits and the work was begun.

On June 16th, 1934, adjacent property owners filed an appeal with the Board of Adjustment asserting that the premises were in a business zone where use for the proposed purposes was forbidden and that the alteration resulted in the extension of a conforming use to a non-conforming use. Thereupon applicants filed a bill in the Court of Chancery and an order to show cause with temporary restraint enjoining the Board of Adjustment and the building inspector from interfering with the work was allowed. Under this protection, the work was completed and the premises have been used continuously as a drive-in gasoline station.

The Board of Adjustment, after hearing, revoked the permits granted by the building inspector, holding that the premises were in a business zone, zoned against the contemplated use, that the alteration resulted in the extension of a conforming use to a non-conforming use in violation of the zoning ordinance and that the building inspector was without authority to grant the permit.

Thereupon, on application Mr. Justice Case granted a writ of *certiorari,* which was heard by him, sitting alone. He determined that the determination of the Board of Adjustment should not be disturbed and affirmed the proceedings (13 *N. J. Mis. R.* 260), saying: "The action of the adjustment board in setting aside the inspector's permit and in denying permission on its own authority was valid. The writ is discharged."

In the rule for judgment it was provided: "but without prejudice to the said prosecutors to institute such further proceedings as they may be advised are proper to frame and try out the right of the said prosecutors to extend the existing non-conforming use so far as it relates alone to the Seventh street frontage of the property of said prosecutors."

The Court of Errors and Appeals affirmed (116 *N. J. L.* 336), and *remittitur* was filed April 2d, 1936.

Pending review by *certiorari,* a consent order was entered in the Chancery proceeding, continuing *sine die* the hearing on the order to show cause, meanwhile continuing the *interim* restraint. On May 9th, 1936, a consent order was entered

dissolving the *interim* restraint, without prejudice to further application for restraint on amended or supplemental pleadings.

After affirmance by the Court of Errors and Appeals, defendants in the Chancery proceeding answered and filed a counter-claim seeking to enjoin the continued use of the premises as a gasoline service station; applicants also filed an amended and supplemental bill seeking to restrain the municipal authorities from interference with the continued use of the premises for such purposes. On May 16th, 1938, a final decree was entered dismissing the bill of complaint, the amended and supplemental bill of complaint and the counter-claim of defendants, and dissolving the restraints against defendants.

After the institution of proceedings for the alleged violation of the zoning ordinance and the dismissal of proceedings in the Court of Chancery to restrain any proceedings by the municipality and the dissolving of temporary restraint, application was made on June 7th, 1938, to the building inspector for permit to continue the use and for a certificate of occupancy, which application was forthwith denied, whereupon, on June 8th, 1938, applicants appealed to the Board of Adjustment for such permits and for permission to continue the use. This petition and notice of appeal is designated as Appeal 708 A.

On the same day, applicants filed a petition praying that the Board of Adjustment, under subparagraphs 2 and 3 of section XIII of the ordinance, vary or modify or grant an exception to certain provisions of the zoning ordinance, or "recommend in writing to the Common Council that the use to which the said premises are now put be permitted in accordance with the powers conferred upon this Board by subdivision 4 of Section XIII following the words 'The Board of Adjustment shall have the following powers,' and that a permit for the use and a certificate of occupancy be granted."

A hearing was had on June 29th and 30th, 1938, at which, by stipulation, the testimony and evidence on the application of June 4th, 1934, and forming the record in the *certiorari*

proceeding, and also evidence in the proceeding in the Court of Chancery, were introduced as evidence in the proceeding then pending as if the witnesses, if called, would testify to the same effect. There was some further testimony submitted to the board designed to show a change in conditions at the location in question.

An August 23d, 1938, the Board of Adjustment filed its opinion denying the applications, and on August 26th, 1938, entered an order denying the relief sought and dismissing the appeals.

In his opinion in the *certiorari* proceeding, Mr. Justice Case said: "The question is whether the building inspector's permit was properly revoked and a permit by the board of adjustment lawfully denied."

In the applicants' brief, it said:

"There is but one meritorious question to be decided, and that is whether applicants, notwithstanding the provisions of the zoning ordinance of Plainfield, have the right (protected by the Constitutions of the United States and of this state) to maintain the use to which their property is now put (automobile service station forbidden in a business zone in which class of zone applicants' property is located) and whether the action of the municipal authorities (be those authorities city engineer, Board of Adjustment or common council) is unreasonable; all the rest is technique and procedure."

If, by the first apparent reason stated, it is meant that by the unauthorized issuance of a permit, acted upon by completion of alterations, the applicants obtained rights which cannot now be disturbed, the point appears to have been decided against that view by the Supreme Court, for Mr. Justice Case said:

"It is next said by the prosecutors that they acquired vested rights when the building inspector's permit had been issued and acted upon and that it is not within the power of the municipality to limit the rights so acquired; citing *Freeman* v. *Hague*, 106 *N. J. L.* 137; 147 *Atl. Rep.* 553. That decision bore upon a building permit granted, before

the passage of the Zoning act (*Pamph. L.* 1928, *ch.* 274) by a duly qualified municipal body. In the present case the permit was issued by an officer who assumed, but did not have, the requisite authority. I do not understand it to be the law that a property owner may obtain from an unauthorized official a permit to do a forbidden act and then, by proceeding quickly with the work, forestall consideration by the lawfully designated tribunal."

This view was approved by the Court of Errors and Appeals. 116 *N. J. L.* 336.

It appears, then, that the only meritorious question presented is whether the refusal of the Board of Adjustment to make an exception to the zoning ordinance, or, in the alternative, to recommend to the common council that the restricted use of applicants' premises be permitted to continue, is arbitrary, unreasonable and without substantial relation to public health, safety, morals or the general welfare of the community.

Paragraph 5 of section 6 of article IV of the State Constitution, adopted September 20th, 1937, is as follows:

"The legislature may enact general laws under which municipalities, other than counties, may adopt zoning ordinances limiting and restricting to specified districts and regulating therein, buildings and structures, according to their construction, and the nature and extent of their use, and the exercise of such authority shall be deemed to be within the police power of the state. Such laws shall be subject to repeal or alteration by the legislature.

The statute, adopted in pursuance of this constitutional amendment is chapter 274 of the laws of 1928, now *R. S.* 40:55 *et seq.* Section 40:55-32 provides as follows:

"Purposes of zoning; essential considerations. Such regulations shall be in accordance with a comprehensive plan and designed for one or more of the following purposes: to lessen congestion in the streets; secure safety from fire, panic and other dangers; promote health, morals or the general welfare; provide adequate light and air; prevent the overcrowding of land or buildings; avoid undue concentration of

population. Such regulations shall be made with reasonable consideration, among other things, to the character of the district and its peculiar suitability for particular uses, and with a view of conserving the value of property and encouraging the most appropriate use of land throughout such municipality."

It is conceded that the zoning ordinance of Plainfield restricts the district in which applicants' property is located as a business zone and that gasoline service stations are forbidden therein. Is this restriction reasonable; is it in the public interest; does it have substantial relation to public health, safety or the general welfare of the community? If so, it is a valid exercise of the power granted, and does not violate any right of applicants in the use of their property.

In its finding the Board of Adjustment says:

"The city was authorized by the enabling act to make an ordinance respecting zoning. Accordingly, the city did, for good reasons, by ordinance, prohibit gasoline service stations in business zones, except as permitted or recommended to council by this board. Such stations by their very nature and construction create traffic congestion, due to the creation of an entering and leaving flow of traffic which has to emerge with, or break out of, or cross the flow of through traffic. Here we have a corner where the average daily flow of cars is twelve thousand. Traffic lights are installed, necessarily creating lines of stopped traffic, on one street or the other, practically at all times. There is a heavy flow of pedestrian traffic on the sidewalks bounding the station, and on the crosswalks at the corner. In short, the location is one of the two or three most dangerous and unsuitable places in Plainfield for a gasoline service station."

The presumption is that the regulations are reasonable unless the contrary be shown. *Burg* v. *Ackerman*, 5 *N. J. Mis. R.* 96. Nor will the action of the Board of Adjustment be disturbed unless its action is shown by evidence to be wrong. *Bilt-Wel Co.* v. *Scott*, 6 *Id.* 621.

A careful review of the proofs sustains the finding of the board that the flow of vehicular and pedestrian traffic at the

point in question and the use of the Park avenue front as contemplated create a menace to safety of pedestrians and vehicles. It is clear that it will increase congestion in the street. Nor does it appear that there is any necessity for such facilities. The applicants have the right to give such service on the Seventh avenue side, in the rear of the building. There are a number of such stations now operating within a short distance of the site. Altogether the regulation does not appear to be unreasonable, nor does the refusal of the board to grant an exception or to recommend the granting of such exception by the common council appear to be arbitrary or unreasonable.

Defendants urge that the matters herein raised are settled by the former proceedings and that all questions are *res judicata*. Applicants urge that the former determinations were upon matters not involving the constitutional rights of applicants to be relieved from the restrictions imposed by the ordinance. Believing, as we do, that the applicants have not shown the right to the relief sought, or that their constitutional rights have been infringed, we prefer to dispose of the applications upon their merits, and have not, therefore, discussed herein the question of *res judicata* raised by the defendants.

The right to *mandamus* rests upon the claim that there exists a clear right to the relief sought by *certiorari*. The determination of one disposes of the other.

The applications for *certiorari* and for writs of *mandamus* are denied, with costs.