276 So.2d 654 (1973)
CITY OF JACKSON
v.
Bennie H. KIRKLAND.
No. 40077.
Supreme Court of Mississippi.
April 16, 1973.
Stennett, Wilkinson & Ward, James A. Peden, Jr., Valentine Surgis, John E. Stone, Jackson, for appellant.
Henley, Lotterhos & McDavid, Charles B. Henley, Jackson, for appellee.
WALKER, Justice:
This is an appeal by the City of Jackson from the ruling of the Circuit Court of the First Judicial District of Hinds County, Mississippi, reversing an order of the City Council which made permanent a temporary stop order and cancelling an alleged permit authorizing appellee to move a dwelling house to 3060 Downing Street in Jackson.
The relevant facts are that the appellee, Bennie H. Kirkland, filed an application with the City to move one single family residence from 365 West Northside Drive to a lot fronting both on Downing Street and Windsor Street, being 3060 Downing Street, which lot already had one residence situated thereon. The application was reviewed by the various departments of the City and on November 1, 1971, "Building Permit Number 68514" was issued to Kirkland to remove the house in question to 3060 Downing Street. Thereafter Kirkland proceeded at considerable expense and *655 in reliance on the permit issued by the City to move the house in accordance with a designated route. After the house was located on the lot, a protest was filed with the City Council, and a temporary stop order was issued to Kirkland and work was stopped. Thereafter the temporary stop order was made permanent for the reason that the city zoning ordinance appearing in Book Z at pages 198-203 provided that only one house could be located on the lot in question and that there was already one house thereon, and Kirkland was ordered to remove the house. The order further provided, however, that Kirkland would be paid for his actual expenses incurred in moving the house onto said location and removing the same therefrom when the removal should take place. Kirkland, feeling aggrieved, appealed to the Circuit Court of the First Judicial District of Hinds County by bill of exceptions, and after a hearing thereon, the court entered its order reversing the order of the City, set aside the stop order entered on December 8, 1971, and reinstated the building permit previously issued giving as reasons therefor that Kirkland had acquired a vested right under the permit and that the City was estopped from revoking it.
The appellee contends that the zoning ordinance does not limit the placing of more than one main family residence on a given lot; however, we find no merit in this contention and without undue prolixity, suffice it to say that we are of the opinion that the ordinance is sufficiently clear to limit the placing of one main building, whether a one-family dwelling or a two-family dwelling, together with the accessory buildings thereto on a single lot.
The primary question presented on this appeal is whether Kirkland has acquired such vested rights in the permit that the City would be estopped from revoking same and requiring removal of the building in question. In determining this issue, we must first consider whether or not the so-called building permit was valid and legally issued in the first instance. As we have held above, the city ordinance clearly prohibited more than one main building and its accessory buildings on this lot. In this case the lot in question already had one main building facing Windsor Street; therefore, it was unlawful for the building inspector or other person to issue a permit to Kirkland to move a second house onto the same lot although facing on Downing Street.
Addressing himself to this question, Mr. Arden Rathkopf, a noted zoning authority, states:
[A]n administrative officer to whom the duty and authority to issue permits has been delegated has only such power with respect to permits as the ordinance has given him. A permit issued for a use or structure which is forbidden by the ordinance is beyond the power of the officer to issue; consequently, it has no legal status, is invalid, and is itself entirely without power to clothe its holder with any legal rights thereunder. (2 Rathkopf, The Law of Zoning and Planning, § 1 at 56-1 (3rd ed. 1964)).
The above rule is also found in 13 Am.Jur.2d Buildings, section 11 (1964):
Generally, it may be said that a building permit issued in violation of law or under mistake of fact confers no right, and may be revoked upon discovery of the error, even after building operations have begun. Numerous cases have held that one to whom a building permit has been illegally issued cannot successfully invoke the doctrine of estoppel so as to preclude the municipality from revoking the permit, notwithstanding the applicant may have acted in good faith, expending money or incurring obligations, in reliance upon the permit, particularly where the permit was issued by some administrative official as distinguished from the legislative body of the municipality, ...
*656 The rule is again enunciated in Giordano v. Mayor and Council of Borough of Dumont, 137 N.J.L. 740, 742-743, 61 A.2d 245, 246-247, 6 A.L.R.2d 956, 959 (1948):
The Court below held `that the right to revoke an illegally issued building permit is clear.' The amendment to the zoning ordinance prohibiting the erection of a gasoline filling station on the appellant's premises had been adopted five months prior to the issuance of the second permit, so that it was issued contrary to the amended zoning ordinance. It was therefore illegally issued because it authorized the construction of a building which the amended zoning ordinance prohibited. The Building Inspector had neither the right nor the authority to issue the second permit. Having been issued illegally, the permit was void ab initio and had no legal efficacy. In Dickinson v. Plainfield, 13 N.J. Misc. 260, 176 A. 716, Mr. Justice Case, now Chief Justice, said: `In the present case the permit was issued by an officer who assumed, but did not have, the requisite authority.' This language was approved by this court in 116 N.J.L. 336, 184 A. 195; Dickinson v. Plainfield, 122 N.J.L. 63, 4 A.2d 91. Moreover, the appellant is charged with notice of the second permit's illegality as he knew or should have known of the amendment to the zoning ordinance, prohibiting a gasoline filling station on his property. Nor did the appellant acquire any vested rights under the illegally issued permit, notwithstanding he may have acted upon it. Any expenditures made by the appellant relying upon the second permit were made at his peril.
Also, see 6 A.L.R.2d 960, 962 where it is stated:
Generally speaking, a permit issued under mistake of fact or in violation of law confers no vested right or privilege on the person to whom the permit has been issued, and may be revoked, notwithstanding he may have acted upon it, and any expenditures made in reliance upon such permit are made at his peril.
This Court has spoken to this general problem in Edwards Hotel and City R. Co. v. City of Jackson, 96 Miss. 547, 575, 51 So. 802, 805-806 (1910) where it was held:
All parties dealing with the city must take note of its charter and the power of its officers. It is a matter of law, and the citizens whom they represent cannot be prejudiced by their unauthorized and ulta vires acts. The powers are the city's powers, and not those of the officers who happen to represent the city.
We are of the opinion and so hold that the person issuing the building permit in question to Kirkland was without authority to issue same as it was in violation of the ordinances of the City of Jackson and that Kirkland acquired no vested rights in the permit which would warrant invoking the aid of the doctrine of estoppel against the City of Jackson to prohibit it from making the temporary stop order final and revoking the permit. It is unfortunate that Kirkland has gone to the trouble and expense of moving the house in reliance on the invalid permit, however when this is weighed against the rights of the protestors living in the neighborhood, it becomes inconsequential. Further, the City of Jackson in its order has indicated that it is willing to reimburse Kirkland for any actual expenses that he has incurred.
The appellee, in support of his position that the City should be prohibited from revoking the permit, relies on the cases of Thompson v. Mayfield, 204 So.2d 878 (Miss. 1967); City of Gainesville v. Bishop, 174 So.2d 100 (Fla.App. 1965); Sakolsky v. City of Coral Gables, 151 So.2d 433 (Fla. 1963); Berry v. Embrey, 238 Miss. 819, 120 So.2d 165 (1960); Bregar v. Britton, 75 So.2d 753 (Fla. 1954); and Miami Shores Village v. William N. Brockway Post No. 124 of American Legion, 156 Fla. 673, 24 So.2d 33 (1945). However, an examination of these authorities shows that there *657 was no legal impediment to the issuance of the permit in the first instance. Therefore, they are not controlling in the case before us.
The judgment of the circuit court is reversed and the order of the city council making temporary stop order permanent is reinstated.
Reversed and order of city council reinstated.
RODGERS, P.J., and SMITH, SUGG, and BROOM, JJ., concur.