524 So.2d 947 (1988)
Ben L. JOHNSON and James P. Knight, Jr., et al.
v.
HINDS COUNTY, Mississippi.
No. 55897.
Supreme Court of Mississippi.
April 20, 1988.
*949 James P. Knight, Jr., Knight & Knight, Jackson, for appellant.
Natie P. Caraway, John D. Price, Wise, Carter, Child & Caraway, Jackson, for appellee.
Before HAWKINS, P.J., and PRATHER and ROBERTSON, JJ.
ROBERTSON, Justice, for the Court:

I.
This case is about an experienced real estate developer who thumbed his nose at the county's subdivision ordinance. Lots have been formed and sold and houses built. When county planning authorities objected and took him to court, the developer raised a myriad of obstructionist defenses and has simply said, "You didn't catch me in time."
The trial court ordered the developer to move heaven and earth to bring the subdivision into compliance with the county ordinance. We affirm.

II.

A.
Ben L. Johnson had been a land developer in Hinds County, Mississippi, for some twenty-five years. On March 28, 1979, Johnson bought a piece of property in the southern part of the First Judicial District of Hinds County near Byram. He called this property Timberlake Place.
Between Timberlake and U.S. Highway 51 is the Scott property; driveways across the Scott property provide the only ingress *950 and egress to and from Timberlake Place. The previous owners of Timberlake quitclaimed their interest in these driveways to Johnson when he purchased the property. Johnson maintained one driveway across the Scott property. In addition, there were two roads already in existence on the property when Johnson bought Timberlake. After buying the property, Johnson named these roads at the request of the post office and posted road signs identifying the roads.
Before purchasing Timberlake Place, Johnson had a civil engineer draw up a plat of the property, dividing it into lots. The subdivision was never submitted to the Board of Supervisors for approval. See Miss. Code Ann. § 17-1-23(2) (1972). Notwithstanding, Johnson eventually sold all of the parcels as divided on the unofficial plat. Each instrument of conveyance contained restrictive covenants, placing a minimum size requirement on each home to be built and requiring that each lot be used for residential purposes only. A road and utility easement was included in each deed as well.
In addition, Johnson agreed to run water lines into the property and reshape and regravel the existing roads along with building another road. The water system Johnson installed was never approved by the Mississippi State Board of Health, although Johnson claims he was not aware of this until this lawsuit was initiated. More significantly, Timberlake Place in several respects did not conform to the Hinds County Subdivision Ordinance. Johnson openly acknowledged that he did not follow the ordinance because he felt there was no need to.
The dispute further concerns a second, separate parcel of real property owned by Johnson, known as Bolton Heights Subdivision. Johnson purchased this eighty acre tract on July 11, 1980. It lies in the Second Judicial District of Hinds County. This property is not owned solely by Johnson, but by Johnson Land Company, a partnership between Johnson and William L. Waller, Sr.
Prior to purchasing Bolton Heights, Johnson had a preliminary plat prepared, showing twenty-one lots, numbered 1-21 consecutively. Subsequently Johnson had a new plat drawn creating a subdivision which he named Bolton Heights Part I. This plat covered approximately thirty-three of the original eighty acres. Bolton Heights Part I contained Lots 1-11 and 18-21 from the original plat. Lots 12-17 were reserved, and Johnson testified that he had no intention of selling them as a subdivision. Bolton Heights Part I has been approved by the Hinds County Board of Supervisors. Lots 12-17 of Bolton Heights Part I are the properties in controversy in the instant case, in addition, of course, to Timberlake Place.

B.
On April 5, 1983, Hinds County filed two suits against Johnson, one each in the Chancery Courts for the First and Second Judicial Districts of Hinds County. The suit filed in the First District involved Timberlake Place, and the suit filed in the Second District involved Bolton Heights.
In regard to Timberlake Place, Hinds County initially sought a prohibitory injunction against Johnson. The complaint was later amended to demand a mandatory injunction requiring Johnson to perform certain actions on Timberlake Place in order to bring it into compliance with the Hinds County Subdivision Ordinance. See Miss. Code Ann. § 17-1-19 (1972).
The complaint was further amended to join twenty-six additional defendants who were Timberlake lot owners. The County sought a declaratory judgment against these new Defendants. Rule 57, Miss.R. Civ.P. The County asked that the Court declare that each owner had bought his lot subject to the existing Subdivision Ordinance and that from this it follows that Johnson may go on each lot to the extent necessary to bring the land into compliance with the Subdivision Ordinance. Of these 27 defendants, 21 consented to declaratory relief. Lots owners James P. Knight, Jr., James T. Knight, William L. Waller and their respective spouses, each a defendant *951 in this action, objected to the declaratory relief.
In regard to the Bolton Heights property, the County sought an injunction prohibiting Johnson from selling lots 12-17 until these lots were brought into compliance with the Subdivision Ordinance.
The two cases were consolidated for purposes of trial and decision. See Rule 42(a), Miss.R.Civ.P.
The consolidated cases came on for trial on January 26, 1984. In the end, the Chancery Court resolved practically all issues in favor of Hinds County. The Court held that Timberlake Place was subject to the Subdivision Ordinance and then found as a fact that Johnson
did develop a subdivision known as Timberlake Place in the First Judicial District of Hinds County, Mississippi, without complying in any manner with the Hinds County Ordinance or Resolution governing the subdivision of land.
The Court mandatorily enjoined Johnson that he "perform the acts and do the things necessary to bring Timberlake Place ... into compliance ... with the County Subdivision Ordinance."
With respect to the owners of lots lying contiguous to the roads, the Court directed that Johnson solicit their permission to improve the roads at his sole expense. In the case of landowners refusing such permission  the James P. Knights, the James T. Knights, and the Wallers  Johnson was directed to
use all the means available to him at law or in equity to obtain the necessary right-of-way in and across said property for the purposes of constructing the improvements required by said ordinance.
Beyond this and again with respect to Timberlake, the Court entered a declaratory judgment against James P. Knight, Jr., Annie Lou Knight, James T. Knight, Ann S. Knight, William L. Waller, Sr., and Carol O. Waller declaring that each of such parties
purchased their respective lots in Timberlake Place subject to the existing Hinds County Ordinance or Resolution provision regulation governing the subdivision of land
and that Johnson in law had the right
to go upon the roads and adjacent properties of these defendants and improve the roads in order to bring the roads into compliance with said ordinance
... .
without compensation to any of such lot owners.
Turning to the Bolton Heights case, the Court first found that Johnson
had in other subdivisions chosen to ignore the provisions of the Hinds County Ordinance governing the subdivision of lands.
The Court then found that Johnson had caused a preliminary plat to be prepared for Bolton Heights and had filed protective covenants with respect thereto. The Court then permanently and prohibitorily enjoined Johnson from conveying any of the lands comprising Lots 12-17 as shown on the preliminary plat of Bolton Heights Subdivision without full compliance with the Subdivision Ordinance; provided that the injunction should expire of its own force upon acceptance of the Hinds County Board of Supervisors of a plat of Bolton Heights as an accepted subdivision.
Johnson has appealed both judgments. James P. Knight, Jr., and the other five Timberlake lot owners subject to  and objecting to  the declaratory judgment have given a separate notice of appeal.

III.
A point should be noted preliminarily. Ben L. Johnson died on February 17, 1985, after perfection of this appeal. The other Appellants filed in this Court on May 5, 1986, a suggestion of death and a motion to dismiss the appeal as moot. The Appellee, Hinds County, opposes the motion to dismiss, pointing to the rather obvious fact, that the imperative for compliance with the Subdivision Ordinance is as real today as when Johnson was alive.[1]
*952 The nature of the problem before the Court is such that Johnson's personal representatives must be as accountable as was he, no more and no less. We hold that the appeal has been revived in the name of Johnson's estate.
Just as in Cox v. Martin, 75 Miss. 229, 238, 21 So. 611 (1897), where the Court held that contracts are generally enforceable by and against the personal estate of the deceased where the existence of the deceased is not essential to the completion of the contract, we hold that injunctions may be so enforced where there is nothing peculiarly personal in their nature. See also ERB v. Western Display Co., 155 Minn. 225, 193 N.W. 177 (Minn. 1923) (upon defendant's death, substitution of executor of will proper in suit to enforce injunction against loud noises emanating from the defendant's land).

IV.
A second preliminary point should be noted. Timberlake Place and Bolton Heights are wholly subject to the Hinds County Subdivision Ordinance. That ordinance defines a "subdivision" as
the division of a tract or parcel of land into two or more lots, plat sites or other division of land with access roads and/or streets to be built by the developer for the purpose of sale ..., whether immediate or future. Hinds County Land Ordinances, § I, p. 4.
Just what made Johnson think Timberlake and Bolton Heights outside the ordinance escapes us.
The point for the moment is that most of the issues presented on this appeal arose from Johnson's original decision to ignore the County Subdivision Ordinance. In a very real sense Johnson has sought advantage from his own wrong. We trust it will be no surprise that little in our law encourages sympathy for litigants in such a posture.

V.
Appellants first contend that the Chancery Court lacks subject matter jurisdiction over these actions. Their argument is that the case is in essence an eminent domain proceeding which can only be heard by a Special Court of Eminent Domain, i.e., the County Court of Hinds County. See Miss. Code Ann. § 11-27-3 (1972). Appellants assert that this is an eminent domain proceeding because it involves an attempt by the county to take a public road or, alternatively, to exercise jurisdiction over a private road.
Of course, all land use regulations take something. They invoke the police power to legitimate petty larceny and in this sense do resemble eminent domain proceedings. None of this causes us any doubt regarding chancery court subject matter jurisdiction.
This dispute arose because Hinds County sought to enjoin Johnson from selling Lots 12-17 in Bolton Heights Part I and to require him to bring Timberlake Place into compliance with the County Subdivision Ordinance in three particulars: platting, roads and water system. There can be no question but that the County has authority to bring suits of this sort. See Miss. Code Ann. § 17-1-19 (1972). The only question is, in what court?
Subject matter jurisdiction turns on the well pleaded allegations of the complaint. American Fidelity Fire Insurance Co. v. Athens Stove Works, Inc., 481 So.2d 292, 296 (Miss. 1985). Two among the several alternative jurisdictional foci are the nature of the controversy and the relief sought. Dye v. State ex rel. Hale, 507 So.2d 332, 337 (Miss. 1987). Claims regarding title, possession and use of land are well within the chancery court subject matter jurisdiction. Miss. Const. Art. 6, §§ 159, 160 (1890); Miss. Code Ann. § 9-5-81 (1972). See also City of Hattiesburg v. L. & A. Contracting Co., 248 Miss. 346, 159 So.2d 74 (1963).
*953 This case is further subject to chancery court subject matter jurisdiction by virtue of Hinds County's prayer for the equitable relief of injunction. Miss. Const. Art. 6, § 159(a) and (f) (1890); Miss. Code Ann. § 9-5-81 (1972). Also, if any aspect of the case lay within its subject matter jurisdiction, the chancery court had authority to hear and adjudge any non-chancery pure law claims via pendent jurisdiction. Tideway Oil Programs, Inc. v. Serio, 431 So.2d 454, 464 (Miss. 1983); Shaw v. Owen Gin Co., 229 Miss. 126, 133, 90 So.2d 179, 181 (1956); cf. Hall v. Corbin, 478 So.2d 253, 255 (Miss. 1985). This is particularly so when the so-called eminent domain proceeding is at best one for inverse condemnation. See First English Evangelical Lutheran Church of Glendale v. Los Angeles County, 482 U.S. ___, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987); City of Laurel v. Powers, 366 So.2d 1079, 1083 (Miss. 1979); Jackson Municipal Airport Authority v. Wright, 232 So.2d 709 (Miss. 1970).
We find Appellants' original point about public roads and private roads elusive at best. It would seem to go to the county's powers or more generally to the merits of the case. For the moment it suffices to say that we divine no jurisdictional potency to the point.
The assignment of error is denied.

VI.
Johnson has next argued that his due process rights were violated because he did not receive adequate notice of his non-compliance with the Hinds County Subdivision Ordinance. The point is specious. Any violation of the County's regulations regarding notice of non-compliance is irrelevant because that administrative procedure was in no way a prerequisite to the filing and prosecution of the present actions. See Miss. Code Ann. § 17-1-19 (1972); City of Hattiesburg v. L. & A. Contracting Co., 248 Miss. 346, 350, 159 So.2d 74, 76 (1963).
Johnson's right in the premises was reasonable advance notice of these lawsuits and the opportunity to appear and be heard. See Peralta v. Heights Medical Center, Inc., ___ U.S. ___, 108 S.Ct. 896, 99 L.Ed.2d 75 (1988); Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). And the same of Appellants Knight, Knight and Waller. A brief perusal of the record before us reflects without question that all Appellants' due process rights were wholly respected.
The assignment of error is denied.

VII.
Appellants have asserted that the County did not have standing to seek a declaratory judgment against the lot owners pursuant to Rule 57, Miss.R.Civ.P. The lot owners to which Appellants refer are the twenty-six original defendants against whom the County brought in and sought declaratory judgment. Appellants contend that the County was without standing to seek construction of contracts and deeds between private citizens to which it was not a party. The declaratory relief affected only property rights between Johnson and the other defendants  the County was not involved. Therefore, no legal relationship existed between the County and the Defendants so as to meet the requirements for declaratory relief under Rule 57, or so we are told.
Rule 57, Miss.R.Civ.P., governs actions seeking declaratory relief. On the matter of who may seek a declaratory judgment, the rule reads, in pertinent part:
(a) Procedure. Courts of record within their respective jurisdictions may declare rights, status, and other legal relations regardless of whether further relief is or could be claimed. The court may refuse to render or enter a declaratory judgment where such judgment, if entered, would not terminate the uncertainty or controversy giving rise to the proceedings... .
(b) When Available.

(1) Any person interested under a deed, will, written contract, or other writings constituting a contract, or whose rights, status, or other legal relations are affected by statute, municipal ordinance, contract or franchise, may have determined *954 any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise, and obtain a declaration of rights, status or other legal relations thereunder.
As the Comments to the rule point out, "any interested party" may obtain a declaratory judgment. Comments, Rule 57, Miss. R.Civ.P. This same standard exists under the federal counterpart, Rule 57, Fed.R. Civ.P. This standard therefore makes the general law of standing applicable to declaratory actions. 10A Wright, Miller and Kane, Federal Practice and Procedure, Civil 2d § 2757 (1983). If standing exists, the trial judge should hear the case under Rule 57 so long as one or more legal issues vital to the controversy is susceptible of authoritative resolution. In re Validation of $7,800,000 Comb.Util.Sys., 465 So.2d 1003, 1015 (Miss. 1985).
Hinds County falls easily within the category of "any interested party," Rule 57, Miss.R.Civ.P. When the County complained of Timberlake's roads, Johnson defensively invoked the rights of the lot owners and said he had no authority to do anything to fix the roads. Quite sensibly, the County decided to test this defense by joining the lot owners and seeking a declaration of whether in law they might prevent Johnson's road improvement obligations. Appellants argue that the declaratory judgment action sought declaration of property rights between Johnson and his vendees and that the County was a stranger to those transactions. That was true until Johnson asserted defensively his lack of authority in the premises. While Johnson's defensive tactic was rather novel  and quite disingenuous  we consider the County's effort to avoid it well within the scope and contemplation of Rule 57.
On the merits, the declaratory judgment was quite correct. The James T. Knights, the James P. Knights and the Wallers each took title to their respective lots subject to the Hinds County Subdivision Ordinance, and the Chancery Court correctly so declared. The Court was likewise within its authority when it declared that
Ben L. Johnson, as the developer of said subdivision, is allowed to go upon the roads and adjacent properties of these defendants and improve the roads in order to bring the roads into compliance with said ordinance.
The assignment of error is denied.

VIII.
Appellants' next assignment of error is puzzling. They charge that the judgment should be reversed because all necessary parties were not joined. They refer to the owners of the Scott property. The access road to Timberlake runs through the Scott property. Appellants contend the owners of the Scott property were necessary because the relief requested and granted required Johnson to purchase and construct a fifty foot wide road across the Scott property.
The point would lead one to think Appellants were about to present an analysis of Rule 19, Miss.R.Civ.P., concluding in the end that the Scott property owners were sufficiently "indispensable" that the action ought not to have proceeded in their absence. Instead, Appellants offer a wholly different point, to-wit: that this is in essence an eminent domain proceeding and that the Chancery Court as a matter of both jurisdiction and primary law had no authority to do anything to the owners of the Scott property.
Rule 19 is the compulsory joinder rule as opposed to the permissive joinder rule found in Rule 20, Miss.R.Civ.P. Rule 19 provides two situations in which a party must be joined:
(1) A party must be joined if, in his absence, complete relief cannot be accorded to those who are already parties.
(2) A party who claims an interest in the subject of a suit must be joined when the circumstances show that if the suit proceeds to judgment without him, his ability to protect his interest may be impaired or those already parties may be exposed to the risk of multiple obligations.
Hewes, Joinder of Claims and Parties Rules 19-25, 52 Miss.L.J. 81, 82 (1982); see, e.g., Shows v. Watkins, 485 So.2d 288, 290-91 *955 (Miss. 1986) (joinder of grantees required under Rule 19). It may be raised procedurally via Rule 12(b)(7), Miss.R.Civ.P.
Appellants offer no exposition why the owners of the Scott property were parties in whose absence the action ought not have proceeded, and none is apparent. Indeed, some sense of the sort of appeal we have been tendered may be found in the fact that Appellants' "necessary parties" argument is advanced without so much as a mention of Rule 19, Miss.R.Civ.P. (which, as all know, wholly abandons the term and concept of "necessary parties").
Johnson already had a right-of-way across the Scott property, which was his only means of ingress/egress to and from Timberlake Place. Further, Johnson had legal means via statutory authority (Miss. Code Ann. § 65-7-201 (1972)) to obtain a right-of-way across the Scott property.
The Court's order does not take any property of the Scotts. The order deals solely with the persons whom the court had jurisdiction over including the developer and the lot owners in the subdivision. The Court requires the developer to use all means available to him to acquire the necessary right-of-way. The Court stated:
What I am ordering is that Mr. Johnson build the road across the Scott property up to county specifications insofar as he is able to do. He is able to go to the Scotts and attempt to acquire the property necessary to expand the existing road, 12 feet wide I believe, whatever it is now out to county specifications or requirements. If they refuse so to do, then he has the right and is under a duty to take reasonable efforts to get it, and one of those reasonable efforts is to go before the county and obtain their assistance in obtaining the right and easement to build that road across there to county specifications. And the same would be true as to each of the other lot owners, the area that is before them. If they agree to it, it is fine. He can go right ahead. If not, he and they can request the authority.
From the opinion and judgment crafted by the Chancery Court, the owners of the Scott property are not parties sufficiently indispensable that this action ought not have proceeded without them.
The assignment of error is denied.

IX.
Appellants argue that the County was estopped from forcing Johnson to bring Timberlake Place in compliance with the Subdivision Ordinance. The reason offered for the estoppel is that the County issued permits to buyers from eight out of thirteen parcels sold by Johnson even though at the time the permits were issued, the roads in the area did not meet the standard imposed by the Subdivision Ordinance. One permit appears to have been granted after this lawsuit was filed. By using these permits, Appellants contend that the County has waived its rights to enforce the Subdivision Ordinance against Timberlake.
Without doubt, counties have the authority to regulate subdivisions. Miss. Code Ann. § 17-1-23 (1972). The county also has been expressly granted the authority to enforce such land restrictions. Miss. Code Ann. § 17-1-19 (1972). A municipal ordinance operates as any other law, unless it conflicts with a state statute. Sutherland, Stat. Const., § 30.01 (4th ed. 1985).
Failure of enforcement in the past does not render a statute inoperative. Sutherland, Stat. Const., § 34.06 (4th ed. 1986); Department of Public Safety v. Freeman Ready-Mix Co., 292 Ala. 380, 295 So.2d 242, 247 (1974); State v. Egan, 287 So.2d 1 (Fla. 1973); Gibson Products Co. Bowling Green, Ky. v. Lowe, 440 S.W.2d 793 (Ky. 1969). Just because a law has been ignored or not enforced in the past does not render it unenforceable today. Cf. Trans America Ins. Co. v. Paine Supply Co., 194 So.2d 490, 491 (Miss. 1967) (custom cannot change law as written). A governing authority is not precluded from enforcing an ordinance merely because certain persons have been permitted to violate it without prosecution or punishment. See City of Jackson v. Kirkland, 276 So.2d 654 (Miss. 1973) (unlawful issuance of a permit by an official does not prevent the governmental *956 authority from enforcing a valid ordinance).
The County is not estopped from enforcing its Subdivision Ordinance in the premises just because it appears that the ordinance was not enforced against some lot owners of Timberlake Place. Unenforcement will not render a statute inoperative. Sutherland, Stat. Const., § 34.06 (4th ed. 1986).
The assignment of error is denied.

X.
Johnson alleges that the injunctions involving Timberlake Place and Bolton Heights were improper because the County failed to show irreparable harm would result if the injunctions were not granted nor did it show lack of an adequate remedy at law. Further, the injunction regarding Timberlake Place was clearly impractical and unworkable and could not be efficiently enforced. Johnson also contends that there was no factual basis to support a finding that Timberlake Place was a subdivision, arguing that Timberlake did not meet the definition of a subdivision provided in the Subdivision Ordinance.
The latter point is specious. Timberlake Place is a tract of land divided into two or more lots. See Section IV above.
Second, injunctive relief is available upon the County's showing that Johnson has violated the Subdivision Ordinance. See Miss. Code Ann. § 17-1-19 (1972)[2]; City of Hattiesburg v. L. & A. Contracting Co., 248 Miss. 346, 159 So.2d 74 (1963); PMZ Oil Co. v. Lucroy, 449 So.2d 201 (Miss. 1984). The Court had full authority to grant injunctive relief wholly absent any showing of irreparable harm. Implicit in land use regulations enacted for the benefit of the public is that substantial violations per se cause irreparable harm.
Finally, Appellants' challenges to the Chancery Court's findings of fact en route to granting injunctive relief run aground on well settled limitations upon our scope of review. Findings of fact made by the Chancery Court and supported by substantial evidence simply will not be overturned on appeal. See Mullins v. Ratcliff, 515 So.2d 1183, 1189 (Miss. 1987); Estate of Dimple Polk, 497 So.2d 815, 818 (Miss. 1986); Mississippi State Highway Commission v. Wood, 487 So.2d 798, 802 (Miss. 1986); Johnson v. Black, 469 So.2d 88, 90 (Miss. 1985); Georgia Pacific Corp. v. Armstrong, 451 So.2d 201, 204 (Miss. 1984); Griffith, Miss.Chanc.Prac. § 674 (2d ed. 1950).
The facts of this case have been recited above. Suffice it to say that we find those findings prerequisite to the relief granted well within the evidence and beyond our authority to disturb.
The assignment of error is denied.

XI.
The next point presented is that the Chancery Court's findings of fact regarding Bolton Heights Part I were unsupported by the record and based in part on inadmissible evidence. Appellants argue that the only evidence indicating that Lots 12-17 of Bolton Heights were being offered for sale was the testimony of W.W. Golson, Building and Zoning Permit Director, that he or workers in his office had received several telephone calls inquiring whether permits would be granted on those parcels. Even if evidence of these calls was admissible, this evidence of inquiry as to whether lots would be sold does not constitute evidence that the lots were offered *957 for sale outside the platted and recorded subdivision, or so we are told.
The Chancery Court's injunction regarding the Bolton Heights Subdivision was predicated on some rather basic findings of fact. First, the Court found that Johnson had in the past in the case of other subdivisions chosen to ignore the provisions of the Hinds County Subdivision Ordinance. The Court further found that Johnson had caused a preliminary plat to be prepared for Bolton Heights and that he had filed protective covenants covering Bolton Heights. All of this more than amply supported the ultimate finding that Johnson was "about to commit acts" in violation of the Subdivision Ordinance.
Again, the Court's findings of fact were more than amply supported by substantial and credible evidence. The Court's determination that injunctive relief should be provided was well within its discretion. Seen in this light, any evidentiary errors were wholly harmless. The assignment of error is denied.

XII.
Finally, Appellants argue that the Chancery Court has ordered Johnson to do that which he legally could not have done; that is, the order directs the building of roads to county specifications over land that Johnson did not own. This includes land owned by a third party not made a defendant in the lower court action, i.e., the owner of the Scott property. Johnson's appeal has also asserted that it is impossible for him to have his water system approved by the State Board of Health. In addition, Appellants contend that the injunction is ambiguous and full of uncertainties and contingencies.
The Chancery Court has the power and authority to enjoin parties for violations of zoning ordinances. Brooks v. City of Jackson, 211 Miss. 246, 252, 51 So.2d 274, 276 (1951). A zoning ordinance is equivalent to a subdivision ordinance. A county has the authority to seek injunctive relief in order to enforce a subdivision ordinance. Miss. Code Ann. § 17-1-19 (1972). And, a litigant is under a duty to obey an injunction unless that injunction is absolutely void. Equitable Life Assur. Soc. v. Gex' Estate, 184 Miss. 577, 598-601, 186 So. 659, 663, 665 (1939). Further, a mandatory injunction must be specific and spell out exactly what the parties are to do or refrain from doing. Hall v. Wood, 443 So.2d 834, 841 (Miss. 1983); Rule 65, Miss. R.Civ.P.
In the case at bar, the Chancery Court's orders enjoining Johnson, et al., sufficiently point out the actions Johnson  and now his successors in interest  will have to take in order to bring Timberlake Place and Bolton Heights Subdivision into compliance with the Subdivision Ordinance. Nothing appears in those orders beyond Johnson's successors' legal powers as those heretofore existed or as they have been declared below.
The assignment of error is denied.
MOTION TO DISMISS DENIED; AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, SULLIVAN, ANDERSON, GRIFFIN and ZUCCARO, JJ., concur.
NOTES
[1] Inasmuch as these briefs argue the propriety of continuing the appeal in the name of Johnson's estate, the Court will treat them as a petition for writ of scire facias and answer pursuant to Miss. Code Ann. § 11-3-17 (1972). See also Rule 43, Miss.Sup.Ct.Rules.
[2] Miss. Code Ann. § 17-1-19 reads as follows: Remedies of Local Governing Authorities.

In case any building or structure is erected, constructed, reconstructed, altered, repaired, converted or maintained, or any building, structure, or land is used in violation of the zoning law or of any ordinance or other regulation made under authority conferred hereby, the proper local authorities of any county or municipality, in addition to other remedies, may institute any appropriate action or proceedings, to prevent such unlawful erection, construction, reconstruction, alteration, repair, conversion, maintenance or use, to restrain, correct, or abate such violation, to prevent the occupancy of said building, structure or land, or to prevent any illegal act, conduct, business or use in or about such premises.