# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2024-CA-00736-COA

**MARK JEFFERSON GARRIGA** APPELLANT

v.

**CITY OF OCEAN SPRINGS, MISSISSIPPI** APPELLEE

DATE OF JUDGMENT: 05/24/2024
TRIAL JUDGE: HON. MARK ANTHONY MAPLES
COURT FROM WHICH APPEALED: JACKSON COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANT: KRISTOPHER W. CARTER
ATTORNEYS FOR APPELLEE: ROBERT W. WILKINSON
WILLIAM ROBERTS NORMAN
NATURE OF THE CASE: CIVIL - REAL PROPERTY
DISPOSITION: AFFIRMED - 03/10/2026
MOTION FOR REHEARING FILED:

**BEFORE BARNES, C.J., McCARTY AND WEDDLE, JJ.**

**BARNES, C.J., FOR THE COURT:**

¶1.     After Appellant Mark Jefferson Garriga moved a dwelling onto his property, despite being denied a permit by the City of Ocean Springs (City), the City filed a complaint with the Jackson County Chancery Court, seeking a permanent injunction requiring removal of the subject dwelling. After three hearings on the matter, the chancery court entered a final judgment, granting the City's request for a permanent injunction against Garriga and ordering Garriga to remove the subject dwelling from his property. Appealing the judgment, Garriga contends that the matter was not properly before the chancery court and that the judgment should be vacated and rendered or, in the alternative, remanded for a new trial. Finding no error, we affirm the court's judgment.

**Summary of Facts and Procedural History**

¶2.    On January 24, 2024, Garriga submitted a permit request with the City to move an already-constructed dwelling (subject dwelling) onto his property in Ocean Springs, Mississippi.  At that time, Garriga's property was a "historically platted nonconforming lot" and already contained a single-family home and a separate detached garage.  The City denied the application, citing multiple violations of the City's Unified Development Code (UDC), including concerns related to setbacks, accessory structure limitations, and overall lot conformity.

¶3.    On February 2, 2024, Garriga contacted the City to renew his permit request, explaining that the subject dwelling was scheduled to be demolished within days, if not immediately moved from the seller's property.  The City agreed that the subject dwelling could be moved that weekend, with the following conditions: (1) Garriga would submit a site/building plan, and (2) the subject dwelling would be kept on a dolly until the City's approval of a permit.  The subject dwelling was deposited on a nearby vacant lot due to obstruction from overhead power lines.

¶4.    Garriga failed to submit a site plan to the City or to obtain the permit, but on February 28, 2024, the mover of the dwelling submitted a site plan.  Identifying issues, the City requested a site plan from a licensed surveyor.  On March 13, Garriga had the subject dwelling moved onto his property without contacting the City or obtaining a permit.  The City issued a stop-work notice and requested that Garriga immediately submit a site-plan survey to be reviewed for permitting.

¶5. On March 25, 2024, the City filed a "Complaint for Preliminary Injunction" against Garriga with the chancery court, requesting "that Defendant cease this violation of municipal codes and ordinances and remove the complained of dwelling structure from his lot." At the initial hearing on April 10, the chancellor ordered Garriga to provide a survey of his land parcel to the City by the upcoming status hearing on May 10, 2024.

¶6. At the May 10 hearing, Garriga presented a site survey. The City's attorney, while "still asking . . . to have the structure removed," alternatively requested "additional time to review the survey to see if it can be brought into compliance." After further discussion, the chancellor asked the City to submit a report as to whether the property could be made compliant with the City's UDC ordinances. A hearing was reset for May 24, 2024.

¶7. On May 23, the City filed two affidavits—one by Carter Thompson, the community development director and head of the City's planning department, and the other by Darrell Stringfellow, the City's building official. Noting several non-conforming problems with the placement of the subject dwelling, Thompson opined that the subject dwelling "and/or the surrounding structures on the property cannot be altered in a manner that will ever conform to code." Stringfellow outlined the factual timeline of the matter and noted that as of February 26, 2024, "Garriga had still made no effort to work with the City and get a permit to allow the house on his property."

¶8. At the May 24 hearing, Garriga challenged Thompson's affidavit, claiming that he could "get a variance." However, when the chancellor asked the City's attorney whether there was any circumstance "under which a variance could be granted," counsel responded,

3

"To answer your question directly and emphatically, no." The court entered a final judgment on May 24, 2024, granting the City's request for a permanent injunction and ordering Garriga to remove the subject dwelling within forty-five days from the entry of the judgment. Garriga appeals the chancery court's judgment.

**Standard of Review**

¶9.     We "appl[y] a limited standard of review on appeals from chancery court." *Rodgers v. Moore*, 101 So. 3d 189, 193 (¶8) (Miss. Ct. App. 2012). "The chancery court's factual findings will not be disturbed if they are 'supported by substantial evidence unless we can say with reasonable certainty that the chancellor abused his discretion, was manifestly wrong or clearly erroneous, or applied an erroneous legal standard." *Reading v. Reading*, 350 So. 3d 1195, 1199 (¶17) (Miss. Ct. App. 2022) (quoting *Biglane v. Under the Hill Corp.*, 949 So. 2d 9, 13-14 (¶17) (Miss. 2007)). "Questions of law are reviewed de novo." *Id*.

**Discussion**

I.      **Whether the matter was properly brought in chancery court.**

¶10.    Garriga contends that the City was required to pursue administrative remedies under the UDC, rather than pursue its complaint in chancery court. He claims that "[s]ection 1.24 of the UDC . . . provides the *only* means by which the City may enforce its development code provisions, and to punish alleged violations thereof." As the City points out, however, Garriga did not raise this issue during the proceedings before the chancery court; so this argument is waived for the purposes of appellate review. *See In re Est. of Smith v. Boolos*, 204 So. 3d 291, 314 (¶54) (Miss. 2016) (finding issues not raised by the appellant at trial "or

4

addressed by the chancery court . . . are not proper for [appellate] review").

¶11. Regardless, Mississippi law authorizes a municipality to seek injunctive relief in chancery court to enforce zoning ordinances. Mississippi Code Annotated section 17-1-19 (Rev. 2024) identifies the remedies available to a municipality seeking to enforce its ordinances:

> In case any building or structure is erected, constructed, reconstructed, altered, repaired, converted or maintained, or any building, structure, or land, is used in violation of the zoning law . . . the proper local authorities of any county or municipality, in addition to other remedies, *may institute any appropriate action or proceedings, to prevent such unlawful erection, construction, reconstruction, alteration, repair, conversion, maintenance or use, to restrain, correct, or abate such violation,* to prevent the occupancy of said building, structure or land, or to prevent any illegal act, conduct, business, or use in or about such premises.

Miss. Code Ann. § 17-1-19 (Rev. 2024) (emphasis added). Furthermore, in *City of Hattiesburg v. L. & A. Contracting Co.*, 248 Miss. 346, 350, 159 So. 2d 74, 76 (1963), the supreme court recognized that a municipality, "having adopted a zoning ordinance, may pursue the remedy of obtaining an injunction against a violator of it, and is not limited to a proceeding to enforce a penalty." "This is the general rule even though an injunction is not specifically authorized by statute." *Id*.; *cf. Johnson v. Hinds County*, 524 So. 2d 947, 957 (Miss. 1988) (holding that a chancery court "has the power and authority to enjoin parties for violations of zoning ordinances"). This issue is without merit.[1]

---

[1] We also note that the UDC provisions Garriga cites to support his argument on this issue were never introduced into evidence or judicially noticed by the chancery court. "Mississippi appellate courts may not consider information that is outside the record." *Strausbaugh v. Lumpkin*, 282 So. 3d 445, 447 (¶4) (Miss. Ct. App. 2019) (quoting *Hardy v. Brock*, 826 So. 2d 71, 76 (¶26) (Miss. 2002)).

## II. Whether the chancery court erred in not conducting a trial.

¶12. Alternatively, Garriga argues that even if the matter is properly before the chancery court, the court did not hold a trial and provide him "with notice and opportunity to present evidence and witnesses on his behalf." Garriga cites no legal authority in support of this issue. "Our caselaw clearly provides that the failure to cite supporting legal authority precludes consideration of an issue on appeal." *White v. Home Depot*, 404 So. 3d 1216, 1232 (Miss. Ct. App. 2024) (quoting *Green v. Green*, 349 So. 3d 1187, 1200 (¶47) (Miss. Ct. App. 2022)).

¶13. Notwithstanding, we find that the court record does not support Garriga's argument. The chancery court conducted three hearings, considered sworn affidavits, documentary evidence, and testimonial evidence. Garriga was present at every hearing and was given full notice and an opportunity to be heard at each hearing. At the first hearing, the court even afforded Garriga additional time to obtain a survey, despite the fact that the City had requested it weeks prior. As the City argued, "[i]f [Garriga] failed to produce sufficient evidence or take advantage of the time granted to him, such failures are solely his own and not attributable to any procedural shortcoming by the [c]hancery [c]ourt."

## III. Whether evidence supported the issuance of a permanent injunction.

¶14. Lastly, Garriga summarily asserts that the City failed to meet the requirements for a permanent injunction, "as no evidence of irreparable harm or the other elements was ever put on." However, Garriga cites no legal authority nor provides any meaningful argument in support of this claim. He simply argues that "the Chancellor erred by granting an injunction

6

without such a showing." This Court has held, "In the absence of meaningful argument or citation of authority, the appellate court will not consider an assignment of error." *Home Sols. of Miss. LLC v. Ridge*, 301 So. 3d 670, 676 (¶23) (Miss. Ct. App. 2020); *see also Reading*, 350 So. 3d at 1200 (¶¶21-23) (holding appellant's claim was procedurally barred "[a]s a result of a complete failure to abide by the Rules of Appellate Procedure by citing no relevant legal authority or providing any meaningful argument").[2] We therefore consider this issue abandoned and barred from consideration.

¶15. Accordingly, we affirm the chancery court's judgment.[3]

¶16. **AFFIRMED.**

**CARLTON AND WILSON, P.JJ., WESTBROOKS, McDONALD, McCARTY, EMFINGER AND WEDDLE, JJ., CONCUR. LAWRENCE AND LASSITTER ST. PÉ, JJ., NOT PARTICIPATING.**

---

[2] We note that the Table of Authorities in the appellant's brief only cites to the City's Code section 1.24 and Mississippi Rule of Civil Procedure 65.

[3] The City additionally contends in its brief that the "appeal should also be dismissed based on Garriga's failure to post the appeal bond as ordered by the Chancery Court pursuant to Mississippi Rule of Appellate Procedure 8(b)." This argument is moot based on our disposition.